IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ROY W. PATRICK, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-323-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|       Defendant. | ) |

**OPINION AND ORDER**

The claimant Roy W. Patrick requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. As discussed below, the Court finds that the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on April 19, 1960, and was forty-nine years old at the time of the administrative hearing. He has a high school education and past relevant work as a mechanic (Tr. 28-29). The claimant alleges that he has been unable to work since June 1, 2005, because of knee problems (Tr. 151).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on December 9, 2008. The Commissioner denied his applications. ALJ Trace Baldwin held an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 7, 2010. The Appeals Council denied review, so this opinion is the Commissioner's final decision for purposes of appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b); 416.967(b) with the additional physical limitations that he can only occasionally bend, stoop, squat, and kneel (Tr. 15). While the ALJ concluded that the claimant was unable to return to his past relevant work, he found that

there was work the claimant could perform in the national economy, *i. e.*, machine operatives and assembler (Tr. 21).  Thus, the ALJ concluded that the claimant was not disabled (Tr. 21).

### Review

The claimant contends that the ALJ erred by failing: (i) to properly analyze the treating physician opinion of Dr. Noel Miller, M.D.; (ii) to consider the effect of claimant's obesity on the claimant's RFC; and (iii) to properly analyze the claimant's credibility.  The Court agrees with the claimant's second contention.

The claimant was treated on April 3, 2008 and August 31, 2008 in the emergency room of Creek County Community Hospital for hypertension, bilateral knee pain, and pain radiating down the lateral aspect of his left leg (Tr. 179).  The diagnoses, respectively, was osteoarthritis of the bilateral knees and low back pain with sciatica (Tr. 180).

The claimant was examined by state physician Dr. Ronald Schatzman, M.D. on January 21, 2008 (Tr. 184-93).  The claimant's main complaint was knee pain and swelling and reported past history of joint stiffness and swelling (Tr. 185). Examination revealed that claimant had tenderness in both knees and "palpable osteophytes of both knees consistent with degenerative arthritis" (Tr. 186).  His knee flexion was slightly below normal range of motion parameters (Tr. 189).  The assessment was knee pain with probable degenerative arthritis, severe morbid obesity, loss of sense of smell, severe personal hygiene problems, hypertension, and effusion of the left index finger (Tr. 186).

State reviewing physician Dr. Kenneth Wainner, M.D. completed a Physical Residual Functional Capacity Assessment on March 10, 2008 (Tr. 193-200).  Dr. Wainner opined that claimant was capable of occasionally lifting up to 20 pounds, frequently lifting up to 10 pounds, and standing and sitting for six hours in an eight-hour workday, respectively (Tr. 194).  Further, Dr. Wainner thought that the claimant could only occasionally climb, balance, stoop, kneel, crouch, and crawl (Tr. 195).

The claimant received treatment from treating physician Dr. Noel Miller, M.D. on August 8, 2008 (Tr. 203).  At that time, the claimant complained of hurting his back as he got out of his recliner (Tr. 203).  The claimant was prescribed Enalipril, Piroxicam, and Flexeril (Tr. 203).  On January 26, 2009, the claimant presented to Dr. Miller for a prescription refill (Tr. 203).  Dr. Miller completed a Medical Source Statement – Physical on claimant's behalf that is dated October 12, 2009 (Tr. 205-06).  Dr. Miller opined that claimant was capable of frequently and occasionally lifting/carrying up to 10 pounds, standing/walking for 30 minutes continuously, and sitting for less than two hours in an eight-hour workday (and only 30 minutes continuously) (Tr. 205).  In addition, Dr. Miller thought that claimant was never capable of climbing, balancing, stooping, kneeling, crouching, and crawling, and should avoid humidity (Tr. 206).  Dr. Miller also found that claimant would be required to lie down during a normal workday to manage pain (Tr. 206).

The claimant testified that he weighed 350 pounds, up from his normal weight of 225, because he was unable to do anything physically and stays in his recliner (Tr. 30).

He told the ALJ that he worked on his own schedule at a wrecking yard in 2006, but when he had a bad day, he would not work (Tr. 35).  The claimant stated that his knee pain was the primary problem but that he also experiences "excruciating" back pain which forces him to lie down and do nothing (Tr. 36).  When he has muscle spasms in his back, which occur weekly, he elevates his feet and stretches out in the recliner or goes to bed (Tr. 38-39).  He also testified that he has numbness from the top of his buttocks to his calf (Tr. 37).  The claimant also testified that he experiences frequent swelling in his knees after minimal activity, and he elevates his feet in the recliner to alleviate that swelling (Tr. 43-44).

     Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process.  *See* Soc. Sec. Rul. 02-1p, 2000 WL 628049 at *1 (Sept. 12, 2002).  The Listing of Impairments with regard to the Musculoskeletal System references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately."  The ALJ "must consider any additional and cumulative effects of obesity" when assessing an individual's RFC.  20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 1.00 Musculoskeletal System, Q.  However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment."  Soc. Sec. Rul. 02-1p, 2000 WL 628049, at *6.  Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case

record." *Id.*

The ALJ found at step two that the claimant's morbid obesity was a severe impairment, but did not consider its effects on his other impairments or his ability to perform work at step four. The only mention of claimant's morbid obesity whatsoever was a statement that the ALJ had "carefully considered the impact of obesity on the claimant's functioning" and a recitation of his height and weight (Tr. 14-15). But the ALJ wholly failed to discuss whether any of the medical evidence or testimony demonstrated any additional and cumulative effects at step four. *See, e. g., Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741-42 (10th Cir. 2007) (noting that "obesity is [a] medically determinable impairment that [the] ALJ must consider in evaluating disability; that [the] combined effect of obesity with other impairments can be greater than effects of each single impairment considered individually; and that obesity must be considered when assessing RFC."), *citing* Soc. Sec. Rul. 02-01p, 2000 WL 628049, at *1, *5-*6, *7; *Baker v. Barnhart*, 84 Fed. Appx. 10, 14 (10th Cir. 2003) (noting that the agency's ruling in Soc. Sec. Rul. 02-01p on obesity applies at all steps of the evaluation sequence). Instead, he simply adopted wholesale the RFC prepared by the State reviewing physician. *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (discussing requirements of SSR 02-01p and finding that "the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments.") [unpublished opinion]. *See also DeWitt v. Astrue*, 381 Fed. Appx. 782, 785 (10th Cir. 2010) ("The Commissioner argues that the ALJ adequately considered the functional impacts of DeWitt's obesity, given that the

ALJ's decision recognizes she is obese and ultimately limits her to sedentary work with certain restrictions. But there is nothing in the decision indicating how or whether her obesity influenced the ALJ in setting those restrictions. Rather it appears that the ALJ's RFC assessment was based on 'assumptions about the severity or functional effects of [DeWitt's] obesity combined with [her] other impairments' – a process forbidden by SSR 02-1p." ), *citing* Soc. Sec. R. 02-1p, 2000 WL 628049, at *6.

Accordingly, the decision of the Commissioner is reversed and the case remanded to the ALJ for further analysis of the claimant's obesity and whether it had additional and cumulative effects when assessing his RFC. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The Court finds that incorrect legal standards were applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge finds that the decision of the ALJ is REVERSED and REMANDED.

**DATED** this 26th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma